## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEONARD BROOKS, et al** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | **NO. 09-1888** |
| **v.** | : | |
| **SCHOOL DISTRICT OF PHILADELPHIA, et al** | : | |
| **Defendants** | : | |

## <u>ORDER</u>

And now, this                day of                         , 2010, upon consideration of

the Motion for Summary Judgment filed on behalf of Defendants School District of Philadelphia,

Joseph Bahm and Arlene Ackerman, and any response thereto, it is hereby ORDERED that

Defendants' Motion is GRANTED. All claims against Defendants are dismissed with prejudice.

Judgment is entered in favor of the defendants and against Plaintiff.

BY THE COURT:

_____

JACOB P. HART, M.J.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEONARD BROOKS, et al** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | **NO. 09-1888** |
| v. | : | |
| **SCHOOL DISTRICT OF PHILADELPHIA, et al** | : | |
| **Defendants** | : | |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS SCHOOL DISTRICT OF PHILADELPHIA, JOSEPH BAHM AND ARLENE ACKERMAN

Defendants School District of Philadelphia, Joseph Bahm and Arlene Ackerman, by their undersigned counsel, hereby file this Motion for Summary Judgment.  For the reasons set forth in the attached Memorandum of Law, which is incorporated herein by reference, Defendants respectfully request that this Honorable Court dismiss all claims against them as set forth in Plaintiff's Complaint and enter judgment in their favor as a matter of law.

Respectfully Submitted By:

Diane Bernoff Sher, Esquire

Attorney for Defendants

440 N. Broad Street, 3rd Floor

Philadelphia, PA 19130

215-400-5610 (p)

215-400-4121 (f)

1

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEONARD BROOKS, et al** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | **NO. 09-1888** |
| **v.** | : | |
| **SCHOOL DISTRICT OF PHILADELPHIA, et al** | : | |
| **Defendants** | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants School District of Philadelphia, Joseph Bahm and Arlene Ackerman, by their undersigned counsel, move the Court to enter summary judgment in their favor and in support thereof submit the following memorandum of law:

I.    **INTRODUCTION**

Plaintiffs Leonard Brooks and Monica Ryan, parents of the minor child Leonard Brooks, Jr., (hereinafter referred to as "Leonard, Jr."), bring the present action seeking damages pursuant to Title IX of the Education Act, 20 U.S.C. §1681 (a); for civil rights violations under 42 U.S.C. § 1983 ("state created danger"); for violation of the Age Discrimination Act of 1975, 42 U.S.C. § 6101, and against the School District under *Monell*.  Defendant Joseph J. Bahm was, and still is, the principal of Solis-Cohen Elementary School, where the incidents complained of took place in May, 2007. Arlene Ackerman is the present Superintendent of the School District, but she was

1

not affiliated with the School District in May, 2007; she did not become Superintendent until June, 2008. [1]

Plaintiffs allege in their Complaint that their kindergarten son, Leonard, Jr., was "anally raped" by another kindergarten student, identified here as "Tyler," inside a bathroom at the Solis-Cohen Elementary School on May 3, 2007. They allege the assault took place during kindergarten recess. Two days earlier, on May 1, 2007, they allege that Tyler had inappropriately touched Leonard, Jr. on his private parts. Defendants move for summary judgment because plaintiffs have failed to adduce facts sufficient to prevail on the said claims.

The uncontroverted facts of record establish that prior to May 1, 2007, there was no history of sexual assaults by or on kindergarten students at the Solis-Cohen Elementary School, no prior history of assaults in the bathroom during kindergarten recess, and no prior sexual misconduct by Tyler either before May 1, 2007 or after May 3, 2007. Further, once Leonard, Jr. accused Tyler of inappropriately touching his private parts on May 1, 2007, the school principal, Joseph J. Bahm, took immediate, appropriate measures intended to prevent any such incident from recurring. Specifically, on May 1, 2007, Principal Bahm met with both Leonard, Jr. and Tyler to instruct them that such conduct is inappropriate; he informed the parents of both boys and asked them to speak to their children about appropriate behavior (which plaintiff Leonard Brooks, Sr. acknowledges he did); he met with the kindergarten supportive service assistant, Carol Brennian, and discussed with her ways to prevent a repeat of the incident - he specifically asked her to keep an eye on the boys, and to make sure that they did not have an opportunity to be in a situation like that again.

---

[1] The Complaint also originally identified the City of Philadelphia and the school building, Solis-Cohen Elementary School, as defendants, but plaintiff voluntarily dismissed those entities by stipulation of counsel. Docket # 17.

During kindergarten recess at Solis Cohen Elementary School in May, 2007, approximately 150 students played outside under the supervision of five aids or monitors.[2] One aid was specifically assigned to monitor the bathrooms used by the kindergarten students during recess. Despite these precautions, Leonard claims that during recess on May 3, 2007, he was again alone in the bathroom with Tyler, who pulled down his pants and "humped" him in the rear. No adult witnessed this event. Leonard reported it to Carol Brennian within five or ten minutes after it took place. Mrs. Brennian immediately reported it to the kindergarten teacher. The school counselor interviewed both boys on May 3, 2007, notified both sets of parents, notified the Department of Human Services, and referred Tyler for counseling at the J. Peterson Institute, a social service institute that deals with sexual issues.

Leonard's parents, who were notified of the incident on May 3, 2007, came to the school, spoke to the principal, made a police report and took Leonard, Jr. to the hospital where no evidence of physical injury or trauma was found. Although Principal Bahm offered to transfer Tyler to a different classroom, plaintiffs asked the School District to transfer Leonard, Jr. to another school in the District, which request was granted. Leonard, Jr. has been attending a new school since the incident; Tyler remains at Solis-Cohen where he has had no further instances of sexual misconduct.

Neither Carol Brennian, who was present in the school yard and monitoring the students on May 3, 2007, nor Principal Bahm, can explain how the two boys briefly ended up alone in the bathroom despite their efforts to prevent same from happening. Children were permitted to use

---

[2] Although the Complaint at ¶33 contains the bald allegation that during recess there were 150 children and only three monitors, this assertion is inaccurate. Both Principal Bahm and the kindergarten supportive service assistant, Carol Brennian, testified at their depositions that there were five aids or monitors for 150 children; plaintiff has adduced no evidence or testimony to the contrary.

3

the restrooms during recess, under the monitoring of an aid who was posted nearby. While it is possible to speculate how one or both of the boys slipped into the bathroom area without being observed by Mrs. Brennian or another aid, no one can state with certainty. Defendants assert, however, that the incident was not the result of any deliberate indifference or policy on the part of defendants.

## II.     STATEMENT OF UNDISPUTED FACTS

1.      The minor plaintiff, Leonard Brooks, began attending the Solis-Cohen Elementary School approximately one or two weeks before the incidents of May 1 and 3, 2007 which form the basis of the Complaint. See Civil Action Complaint, ¶ 12, attached hereto as Exhibit "A."

2.      Joseph Bahm was the principal of Solis-Cohen Elementary School in May, 2007; he had been principal of the school since 2003. See Civil Action Complaint ¶9; Deposition of Joseph J. Bahm, pp. 4 - 6, attached hereto as Exhibit "C."

3.      Arlene Ackerman did not become Superintendent of the School District until June, 2008; she was not affiliated with the School District at the time of the incidents complained of in May, 2007; thus there is no basis for an action against her in her individual capacity. See Answer to the Complaint, ¶ 10, attached hereto as Exhibit "B."

4.      On May 1, 2007, there was an incident at Solis-Cohen Elementary School involving two kindergarten students, the minor plaintiff, Leonard Brooks, Jr. ("Leonard, Jr.") and another boy identified herein as "Tyler." Complaint, ¶14. - 17.

5.      Specifically, it is alleged that Tyler touched Leonard, Jr.'s genitalia. *Id.*

4

6.      The incident of May 1, 2007 was discovered when, during recess, the
kindergarten supportive service assistant, Carol Brennian, found Tyler and Leonard, Jr. in the
bathroom in the same stall. Deposition of Carol Brennian, pp. 14 - 17, attached hereto as Exhibit
"D."

7.      Ms. Brennian asked what they were doing, and when Leonard, Jr. told her that
Tyler had touched his private parts, Ms. Brennian immediately notified the kindergarten teacher.
*Id.*

8.      Principal Bahm was then notified of the incident, and he took the following
actions: (1) the principal, counselor and teacher spoke to both boys and instructed them that such
conduct was not permitted; (2) the boys were told that they should never be alone together,
especially in the bathroom; (3) Principal Bahm met with the kindergarten supportive service
assistant, Carol Brennian; (4) they had a conversation and discussed what they could do to
prevent something like that from happening again; (5) Principal Bahm directed Ms. Brennian to
keep an eye on the boys to make sure they did not have an opportunity to be in a situation like
that again; (6) he ensured that the school informed the parents of both boys of what had occurred,
and he personally spoke to the parents. Deposition of Joseph J. Bahm, pp. 6 - 10.

9.      Principal Bahm testified as followed at his deposition:

Q.      What was your original reaction, what did you do after the first incident to
attempt to remedy the problem?

A.      Talk to both boys with the counselor, contacted both parents to make them
aware of the situation, asked them to talk to their children and ***talk to Mrs. Brennan***

*about this to be proactive and make sure that when she escorts the kids to the*

*bathroom, that these two boys not be allowed to use the bathroom at the same time.*

*Id.* at p. 25 - 26. (emphasis added).

10.   As soon as Mr. Brooks, Sr. arrived at school on May 1, 2007 to pick up Leonard, Jr., he was told that an incident had occurred. Deposition of Leonard Brooks, Sr., pp. 17 - 25, attached hereto as Exhibit "F."

11.   On May 1, 2007, Mr. Brooks discussed the incident with both his son's kindergarten teacher and the principal of the school; he was told what the school was doing to make sure the incident did not happen again, specifically, that the teacher would monitor the boys and move their seats. *Id.* at p. 22.

12.   Mr. Brooks instructed his son that the behavior was very inappropriate. *Id.*, at p. 23.

13.   On May 3, 2007, Leonard, Jr. reported to Ms. Brennian that, during recess, Tyler had again had an incident with Leonard in the bathroom. Deposition of Carol Brennian, p. 17 - 28. Mrs. Brennian believes he reported the incident to her approximately five or ten minutes after it took place. *Id.* at 20 - 21.

14.   Again the incident was brought to the immediate attention of the kindergarten teacher and the principal. *Id.*

15.   The school counsel, Arlene Taylor, interviewed both boys on May 3, 2007. Deposition of Arlene Taylor, pp. 10 - 13, attached hereto as Exhibit "E." The notes of Ms. Taylor's interviews are attached as part of Exhibit "E."

6

16.     Counselor Taylor took the following actions: (1) she interviewed both boys; (2) in accordance with school policy, she reported the alleged sexual assault to the Department of Human Services (DHS); (3) she spoke to both sets of parents; (4) she recommended counseling for Tyler at the J. Peterson Institute, a social service institute that deals with sexual issues. *Id.*, pp. 12 - 16.

17.     In accordance with School District policy, the matter was reported as a "Serious Incident" and a Serious Incident report was prepared, a copy of which is attached as Exhibit "H."

18.     As part of his investigation, Principal Bahm asked the classroom teacher, Stephanie Heller, and kindergarten supportive service assistant, Carol Brennian, to prepare summaries of what occurred. Their written statements are attached as Exhibit "I."

19.     The policy at Solis-Cohen Elementary School regarding use of bathrooms by kindergarten students in May, 2007 is summarized by Assistant Principal Michelle Byruch in the interview notes attached hereto as Exhibit "J."

20.     Both Principal Bahm and the kindergarten supportive service assistant, Carol Brennian, testified at their depositions that during kindergarten recess, there are five aids or monitors outside who supervise approximately 150 students, who are in the fenced in schoolyard. An aid is stationed by the bathroom area to monitor the two bathrooms. Deposition of Joseph J. Bahm,  p. 27, 13 - 14; Deposition of Carol Brennian, p. 29.

21.     Prior to May 1, 2007, Tyler had never been involved with any incidents of a sexual nature at Solis-Cohen Elementary School. Deposition of Principal Joseph J. Bahm, pp. 20; deposition of Carol Brennian, p. 23; deposition of Arlene Taylor, p. 19.

22.     Since the incident of May 3, 2007, Tyler, who continues to attend Solis-Cohen Elementary School, has never been involved in any incidents of a sexual nature. *Id.*

23.     The incidents of May 1 and 3, 2007 were isolated incidents at Solis-Cohen Elementary School, and there have been no similar incidents before or since. Deposition of Joseph J. Bahm, pp. 20, 26 - 27.

24.     Principal Bahm has not had to make any changes to the bathroom guidelines or bathroom policies since May 3, 2007:

> Q.     Have you made any changes at all to the bathroom guidelines or bathroom policies?
>
> A.     No. This was really an isolated incident.

*Id.* at p. 30.

25.     Principal Bahm is unable to explain how Tyler and Leonard came to be inside the bathroom during recess on May 3, 2007. When asked for his understanding of how this occurred, he testified:

> "I have no idea. They were instructed never to do that after the first incident, and I had Ms. Brennan, I informed her that she was to make sure that they did not do that."

*Id.* at p. 14.

26.     Following the incident of May 3, 2007, plaintiffs requested the School District to transfer Leonard, Jr. to a different school, and the School District complied with their request.

See Deposition of Joseph J. Bahm, p. 28 - 29 (Leonard's parents "requested that he not return to Solis-Cohen."); See also Deposition of Leonard Brooks, Sr., p. 43 ("Q. Who made the decision to transfer Leonard out of the Solis-Cohen School?   A.   Me and his mother.")

27.     Although plaintiffs allege that Leonard, Jr. suffered emotionally as a result of the incident, it is undisputed that Leonard, Jr. did not sustain any physical injuries as a result of the incidents of May 1 and 3, 2007. Deposition of Leonard Brooks, Sr., p.35 (emergency room did not tell him that Leonard, Jr. had any physical injury or physical trauma); Deposition of Monica Ryan (mother of Leonard, Jr.,), pp. 22 - 23, attached hereto as Exhibit "G." (mother told at the hospital that "because they're both so small, it wouldn't be no kind of a showing of a penetration or nothing like that.").

28.     Plaintiffs have adduced no admissible, competent evidence to support the allegation in their Complaint, ¶ 18, that that Tyler had previously engaged in similar behavior with other students, that same was known to the defendants, and that defendants took no action on that information. In fact, all of the evidence of record establishes that Tyler had never been involved in any other incident of a sexual nature while at Solis-Cohen Elementary School. Deposition of Principal Bahm, pp. 20; deposition of Carol Brennian, p. 23; deposition of Arlene Taylor, p. 19.

29.     Plaintiffs have adduced no competent, admissible evidence to support the allegation in their Complaint, ¶ 35, that the kindergarten student Tyler "pulled down Brooks pants and anally raped Brooks." On the contrary, according to the admissions of his parents, Leonard, Jr. sustained no physical injury or trauma. Deposition of Leonard Brooks, Sr., p.35; Deposition of Monica Ryan, pp. 22 - 23.

30.    Plaintiffs have adduced no competent, admissible evidence to support the allegation in their Complaint, ¶39, that the defendants contacted DHS "in retaliation" for the plaintiffs' filing of a police report. On the contrary, all of the evidence of record establishes that the school contacted DHS in accordance with its policy to report instances of alleged sexual assault.

31.    Plaintiffs have adduced no competent, admissible evidence that the School District or any of its employees had actual knowledge of sexual harassment of plaintiff prior top the incident of May 3, 2007.

32.    Plaintiffs have adduced no competent, admissible evidence that the School District or any of its employees were deliberately indifferent concerning the incidents complained of.

33.    Plaintiffs have adduced no competent, admissible evidence that the School District or any of its employees had actual knowledge of severe and pervasive sexual harassment at Solis-Cohen Elementary School.

34.    The policies at Solis-Cohen Elementary School regarding use of the bathroom facilities by kindergarten students were reasonable.

## III.    LEGAL STANDARD

Discovery is now closed; the defendants School District of Philadelphia, Joseph Bahm and Arlene Ackerman move for summary judgment in their favor.  Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* All inferences must be drawn, and all doubts resolved, in favor of the nonmoving party. *Id.* at 255.

If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The nonmoving party cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). In order to defeat a motion for summary judgment, the nonmoving party must demonstrate evidence on which a jury could reasonably find for the nonmovant. *Liberty Lobby*, 477 U.S. at 252. Therefore, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## IV.   PLAINTIFF'S EVIDENCE FAILS TO ESTABLISH A CLAIM UNDER TITLE IX: THE SCHOOL DISTRICT WAS NOT DELIBERATELY INDIFFERENT

In Count I of their Complaint against all defendants, Plaintiffs allege violation of

Leonard, Jr.'s rights under Title IX for allegedly permitting student-on-student sexual

harassment. Title IX provides that:

> No person in the United States shall, on the basis of sex, be excluded from participation
>
> in, be denied the benefits of, or be subjected to discrimination under any education
>
> program or activity receiving federal financial assistance . . . .

20 U.S.C. § 1681(a).

Title IX encompasses sexual harassment of a student and is enforceable through an

implied private right of action for money damages against a school district. *Franklin v. Gwinnett*

*County Pub. Sch.*, 503 U.S. 60, 75-76, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992); *Gebser v.*

*Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 283-284, 288, 118 S. Ct. 1989, 141 L. Ed. 2d 277

(1998).

This implied right of action permits recovery for student-on-student sexual harassment

under "certain limited circumstances . . . ." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629,

643, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999). However, the enforcement power of Title IX

maybe exercised only over the recipient of federal funds, and liability for damages under Title IX

has not been extended to parties outside the scope of that power. *Davis v. Monroe County Bd. of*

*Educ.*, 526 U.S. at 640-641. Therefore, the Title IX allegations against individual defendants

Joseph Bahm and Arlene Ackerman must be dismissed as a matter of law. *Doe v. N. Allegheny*

*Sch. Dist.*, 2009 U.S. Dist. LEXIS 89397.

To prevail against the School District in their claim of student-on-student sexual

harassment under Title IX, Plaintiffs must show that (1) the School District received federal

12

funds; (2) sexual harassment occurred; (3) the harassment occurred under "circumstances wherein the [School District] exercise[d] substantial control over both the harasser and the context in which the . . . harassment occurred"; (4) the [School District] had "actual knowledge" of the harassment; (5) the [School District] was "deliberately indifferent" to the harassment; and (6) the harassment was "so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. at 645, 650.

It is important to note that the private right of action only lies where the school district is deliberately indifferent to known acts of sexual harassment and the harasser is under the school's disciplinary authority. *Id.* at 633. Where a school district does not engage in sexual harassment directly, it may not be liable for damages unless its deliberate indifference makes a student vulnerable to or causes them to undergo harassment. *Id.* at 644-45. *Deliberate indifference to acts of peer sexual harassment arises only where the school district's response or lack of response to the harassment is clearly unreasonable in light of the known circumstances.* *Id.* at 648. *Doe v. Bellefonte Area Sch. Dist.*, 106 Fed. Appx. 798 (3rd Cir., 2004) (emphasis added).

As the court stated in *Doe v. Bellefonte Area Sch. Dist.*, 106 Fed. Appx. 798, 800 (3rd Cir., 2004):

> *The relevant inquiry for purposes of evaluating whether the School District here was deliberately indifferent to known circumstances of harassment is to review its response to reported incidents of harassment.* Each and every time Doe complained, the School District responded with reasonable actions which eliminated further harassment between

13

Doe and the student(s) involved in each incident. Students were suspended and others were given warnings and counseled regarding the seriousness of harassment.

(emphasis added).

To establish deliberate indifference, a plaintiff must show *"an official decision by the recipient [of federal funds] not to remedy the violation[s]."* *Gebse*r, 524 U.S. at 290, 118 S.Ct. at 1999, 141 L.Ed.2d at 292. (emphasis added).  In the present case, there is no evidence that the School District administrator, principal Bahm, made an "official decision not to remedy" the alleged harassment. On the contrary, the record establishes that Principal Bahm took immediate, reasonable steps to address the situation which involved two kindergarten students, neither one of whom had had any prior instances of sexual misconduct.  In this connection, it is important to emphasize that school administrators receive substantial deference in cases of alleged student-on-student harassment. Our courts have repeatedly held that victims of harassment have, for example, no "right to make particular remedial demands." *Davis*, 526 U.S. at 648, 119 S.Ct. at 1674, 143 L.Ed.2d at 857. Rather, "funding recipients are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648-49, 119 S.Ct. at 1674, 143 L.Ed.2d at 857 .

Moreover, if the School District's response to the harassment is reasonable, plaintiff does not state a valid claim if the response does not immediately stop the harassment. See *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 708 (2007) wherein the court stated:

Moreover, to succeed on her claim, Plaintiff must show that, after obtaining "actual notice" of the underlying facts, Wishart [the high school principal] exercised "deliberate

14

indifference" to those facts by engaging in a "clearly unreasonable" response. *Vaird v. Sch. Dist. of Phila.*, 2000 U.S. Dist. LEXIS 6492, 2000 WL 576441, at *3 (E.D. Pa. May 12, 2000). ***In other words, if Wishart took "timely and reasonable measures" to end the harassment, id., even if she were unsuccessful, then she did not display deliberate indifference to it.*** In short, Wishart must have been aware of the sexual relationship and failed to take reasonable action to respond to this knowledge.

(emphasis added).

Summary judgment is appropriate and will be upheld when the plaintiff's evidence fails to establish deliberate indifference on the part of the school administrator. *Doe v. Bellefonte Area Sch. Dist.*, 106 Fed. Appx. 798, 800 (3rd Cir., 2004).

Plaintiff fails to establish the other elements necessary to prevail on their claim under title IX. Specifically, there is no evidence that the School District had "actual knowledge" of harassment before the incident of May 3, 3007. Although the Complaint alleges in ¶52 that "School District officials, including the counselor, John Doe and Principal Bahm, knew that Tyler was sexually assaulting and harassing Brooks, Jr. and other students at school," the record is devoid of any evidence whatsoever to support these allegations. While there was an incident of May 1, 2007, the circumstances of same do not clearly rise to the level of "sexual harassment." It is simply unclear exactly what Leonard, Jr. and Tyler were doing in the bathroom when Mrs. Brennian found them. In any event, even if such an incident is deemed to be "sexual harassment," as set forth above, the actions taken do not allow a finding of "deliberate indifference."

Secondly, plaintiffs have failed to establish that the harassment was severe and pervasive. On the contrary, the undisputed testimony is that the incident involving Tyler and Leonard, Jr. was isolated.

For all of these reasons, all defendants ask that summary judgment be entered in their favor on the claim pursuant to Title IX.

## V.   PLAINTIFF'S EVIDENCE FAILS TO ESTABLISH A CLAIM UNDER §1983

In Count II of the Complaint, plaintiffs allege a cause of action under 42 U.S.C. §1983, specifically, under the "state-created danger" doctrine. This claim must also fail as a matter of law.

Section 1983 allows a person deprived of their constitutional rights to sue a party who, acting under the color of state law, caused the deprivation. 42 U.S.C. § 1983. However, Section 1983 alone does not create any substantive rights, but merely provides a remedy for the violation of rights secured by the Constitution. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) Consequently, "a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States and that the alleged deprivation was committed by a person acting under the color of state law." *Kneipp*, 95 F.3d at 1204 (internal quotation marks omitted). Plaintiff appears to rely upon the state-created danger exception to the substantive due process clause of the Fourteenth Amendment. See Complaint, ¶ 65 – 66.

It is a widely accepted principle that the Fourteenth Amendment's Due Process Clause does not impose an affirmative duty on states to protect their citizens. *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1368-69 (3rd Cir. 1992) (en banc); see *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195-96, 109 S.Ct. 998, 103

L.Ed.2d 249 (1989) ("the State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."); *Morse v. Lower Merion School District*, 132 F.3d 902 (3rd Cir. 1997).  Nor is there a constitutional duty imposed upon the District or its employees to protect individual students from violence by their peers. *D.R.*

In *DeShaney,* plaintiffs were a young boy (Joshua DeShaney) and his mother who sued the Department of Social Services ("DSS") to recover for injuries suffered by Joshua at the hands of his father.  DSS had received several reports suggesting that Joshua had been abused by his father.  At some point, Joshua was removed from the home, but was later returned to the custody of his father.  *Id.* at 192.  Thereafter, Joshua's father beat him so severely that he lapsed into a life-threatening coma that left him permanently brain-damaged to a degree that he required life-long institutionalization.  Joshua's father was convicted of child abuse. *Id.* at 193.

The Supreme Court examined the parameters of the protections afforded by the Fourteenth Amendment Due Process clause.  Recognizing that the Due Process clause prohibits a State from depriving persons liberty without due process of law, the Supreme Court held that "the due process clauses generally do not confer an affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty and/or property interests." *Id.* at 196. The *DeShaney* Court specifically stated that the Fourteenth Amendment does not obligate the state to protect its citizens from private harm:

> *[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.* The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.

*DeShaney*, 489 U.S. at 195 (emphasis added).

Thus, DeShaney forecloses claims premised on the alleged failure of the state to protect citizens from third party harm.

The allegations and record evidence developed by Plaintiffs in the instant matter amount to exactly the type of claim precluded by the Supreme Court in *DeShaney* - a failure to protect and/or failure to supervise claim.  Plaintiff contends that the Defendants failed to protect Leonard, Jr., from the improper actions of his fellow kindergarten student, Tyler. See Complaint, ¶¶ 47, 48, 53, 62, 66 (¶ 66 specifically states claim is based on "state-created danger and failure to protect.") These claims fall squarely under the prohibition of *DeShaney*, and as such, Plaintiffs' Due Process claim against the District fails as a matter of law.

Plaintiffs attempt to circumvent *DeShaney* by shoehorning their claim into the state-created danger exception originally adopted by the Third Circuit in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996).  In *Kneipp*, the police stopped Samantha and Joseph Kneipp while they were walking home late at night after having been at a bar drinking.  Samantha was heavily intoxicated and had difficulty standing.  The police "intervened to cut off Samantha's private source of protection by giving Joseph permission to go home alone." *Id.* at 1210.  She was later found unconscious at the bottom of an embankment suffering from hypothermia, which caused her permanent brain damage. *Id.* at 1202-03.  The Third Circuit held that the injuries to Samantha were foreseeable because it was clear that she was extremely intoxicated and that a reasonable trier of fact could conclude that the officers "affirmatively placed [Mrs. Kneipp] in a position of danger." *Id.*; but see *Burella v. City of Phila.*, 501 F.3d 134, 147 (3d Cir. 2007); *Bennett v. Philadelphia*, 499 F.3d 281, 290 (3d Cir. Pa. 2007); *Cuevas et al. v. City of Philadelphia, et al.* 2006 U.S. Dist. LEXIS 56107, Civil Action No. 05-3746, August 11, 2006 (E.D.Pa. 2006) (J. Pratter), aff'd by *Cuevas v. City of Philadelphia*, 2007 U.S. App. LEXIS

24398 (3d Cir. Pa., Oct. 17, 2007); *Brown v. Commonwealth of Penn. Dept. of Health Emerg. Servcs.* 318 F.3d 473, 477 (3d Cir. 2003); *Schieber v. City of Philadelphia,* 320 F.3d 409 (3d Cir. 2003).

The Third Circuit has revisited and clarified the parameters of the state-created danger exception adopted in *Kneipp.* See *Phillips v. County of Allegheny,* 515 F.3d 224, 240 (3d Cir. Pa. 2008; *Bright v. Westmoreland County,* 443 F.3d 276, 281 (3d Cir. 2006); see also *Kaucher v. County of Bucks,* 455 F.3d 418 (3d Cir. 2006); *Sanford v. Stiles,* 456 F.3d 298 (3d Cir. 2006). To prevail on a state created danger claim, a plaintiff must prove the following four elements:

(1)     the harm ultimately caused was foreseeable and fairly direct;

(2)     a state actor acted with a degree of culpability that shocks the conscience;

(3)     a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4)     a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. *Bright,* at 281; *Mohammed, infra.* A failure to meet any of these prongs results in a failure to state a valid claim within the "state-created danger" exception. See *Morse* 132 F.3d at 914 (noting that it is not necessary to determine whether the third prong is met as the other prongs have not been). Plaintiffs have failed to offer evidence which could satisfy this four-part test and consequently summary judgment is appropriate.

a.    **Foreseeable and Fairly Direct Harm**

The cases in which the courts have found this element satisfied generally involve situations where a specific harm to a specific person was foreseeable. *Kneipp*, 955 F.3d at 1201; *Morse*, 132 F.3d at 908.  In *Kneipp*, the Court focused on Samantha's visible state of intoxication and the police affirmatively sending away her source of protection to conclude that that "a reasonable jury could find the harm likely to befall Samantha if separated from Joseph while in a highly intoxicated state in cold weather was foreseeable." *Kneipp*, 955 F.3d. at 1208.

*Morse* provides a contrast to *Kneipp*. In *Morse*, a teacher was killed by a mentally deranged woman who gained access to the school via an unlocked back door that was being used by contractors. *Id.* at 904.  The court found that this harm was not foreseeable because the state actors could not have foreseen that a mentally deranged woman would enter through the unlocked door and kill a teacher. *Id.* at 908.  The court continued on to explain that absent any knowledge of the assailant's mental condition or violent history, the School District had no reason to foresee the harm that ultimately occurred.  *Id.*

The factual scenario presented in this case is more analogous to *Morse* than *Kneipp*.  In this case, Plaintiff would appear to argue that it was foreseeable that Tyler would pull down Leonard, Jr.'s pants inside a bathroom stall and attempt the type of sexual activity described.  However, there is no evidence that any Solis-Cohen staff had reason to believe that Tyler would behave in such a manner, as he had never done so prior to the incident of May 3, 2007.

The prior incident of May 1, 2007 is ambiguous at best, and clearly does not place the School District on notice that Tyler would engage in such upsetting conduct. The two kindergarten boys were discovered in a bathroom, and appeared to have been engaging in some

20

type of sexual exploration. There was no report of trauma or attempted trauma. Consequently, there is no genuine issue of material fact as to the foreseeability of Leonard, Jr. being assaulted by Tyler, especially when Tyler had never engaged in such conduct before. This constitutes a failure in regard to the first element of the "state-created danger" danger test.

In a case involving student-on-student violence in the School District of Philadelphia, the Third Circuit affirmed summary judgment as to the defendants where the injury to the plaintiff was not foreseeable and the district did nothing to make plaintiff more vulnerable to harm. *Mohammed v. School Dist. of Philadelphia*, 2006 U.S. App. LEXIS 13814 (3d Cir. 2006). In *Mohammed*, a student was struck by a punch intended for another student and suffered injuries as a result. In contrast to the present case, the assault in *Mohammed* took place in a school which admittedly had a known problem with violence. *Id.* In addition, the stairwell where the assault occurred was unsupervised at the time. *Id.* In affirming the district court's granting of summary judgment to the defendants, the Third Circuit determined that the failure to monitor the area or stop the pervasive violence in the school did not render the plaintiff "more vulnerable than he would have been in the absence of state intervention." *Id.* It was reasoned that the school's failure to act placed the plaintiff in no worse of a position than he would have been in were the school not involved. *Id.*

A recent decision by the Honorable Thomas O'Neill of this Court is also instructive. *Bailey v. Sch. Dist. of Phila.*, 2008 U.S. Dist. LEXIS 8971 (E.D. Pa. Feb. 7, 2008). In *Bailey*, the minor-plaintiff, a ninth grade student, was scheduled to go on a school-sponsored field trip. However, after following instructions to assemble outside the school at the designated staging area, she was informed by a teacher that she would not be allowed to go on the trip because of the lack of space and confusion over her payment of the field trip fee. As plaintiff walked toward

21

the school building to re-enter, she was informed by a friend that the doors were locked and she required a note to get back inside. Subsequently an adult male lured the minor-plaintiff off school grounds, took her to a drug house, and raped her. She was missing for approximately one week.

Plaintiff's mother filed suit against the School District under the state-created danger theory. Granting the District's Motion to Dismiss, Judge O'Neill found that the plaintiff failed to allege the first element of the state-created danger test. There was no allegation that the school was aware of anyone posing a credible threat of violence to persons standing outside the school building, and no allegation that defendants were aware of the likelihood that a student would be abducted from school grounds and raped. "Much like the victim in *Morse*, plaintiff B. was 'the tragic victim of random criminal conduct rather than of school officials' deliberate, callous decisions.'"Id.at *9-10, (citations omitted).

Like the plaintiffs in *Bailey* and *Mohammad*, Plaintiffs herein have failed to meet their burden of proof that the harm to Leonard, Jr. was foreseeable and fairly direct. Even assuming Plaintiffs presented evidence, which they did not, that Tyler had previously harassed Leonard, Jr. or others in school, such scenarios do not establish that it was foreseeable that Leonard, Jr. would be the victim of such an act as is alleged to have taken place May 3, 2007.

### b.    Standard of Culpability

The Third Circuit clarified the applicable standard of culpability necessary to prevail in a state-created danger theory in *Sanford v. Stiles*, supra. "[I]n any state-created danger case, the state actor's behavior must always shock the conscience. But what is required to meet the conscience-shocking level will depend upon the circumstances of each case, particularly the

extent to which deliberation is possible. In some circumstances, deliberate indifference will be sufficient. In others, it will not." *Sanford,* 456 F.3d at 310.  The time within which the government actors had to respond to an incident is of particular significance.  Where the circumstances require a state actor to make something less exigent than a "split-second" decision but more urgent than an "unhurried judgment," i.e., a state actor is required to act "in a matter of hours or minutes," a court must consider whether a defendant disregarded a "great risk of serious harm rather than a substantial risk." *Id.*

In this case, Plaintiffs appear to contend that the failure to supervise Leonard, Jr. and Tyler at every moment during kindergarten recess "shocks the conscience." Even if the "deliberate indifference" standard is applied, there is no evidence that Principal Bahm was deliberately indifferent, or that the incident of May 3, 2007 was the result of anything more than, at the most, a negligent failure to supervise the kindergarten students more closely.

There is no evidence that Principal Bahm was indifferent following the reported incident of May 1, 2007. In fact, among the other actions he took on May 1, 2007, was his instruction to the kindergarten supportive service assistant, Carol Brennian, specifically to observe the boys and to make sure that they were not alone, so as to prevent any further incidents of what appeared to be sexual exploration. If Mrs. Brennian, for some unknown reason, did not oversee the boys adequately (if she turned the other way, say, or was distracted by another student at the moment that Tyler and Leonard, Jr., together or apart, entered the bathroom facilities during recess, at a time when an aid was supposed to be monitoring the bathrooms), such conduct cannot be attributed to deliberate indifference on the part of Principal Bahm. There is no evidence to support a finding that his reliance on Mrs. Brennian was unreasonable. In fact, it was Mrs. Brennian who had discovered Tyler and Leonard, Jr. in the bathroom on May 1, 2007.

In *Giddings v. Joseph Coleman Ctr.*, 278 Fed. Appx. 131 (3rd Cir. 2008), the Court considered the question of whether "deliberate indifference" shocked the conscience of the court in a case and upheld the grant of summary judgment in favor of a parole officer who allegedly failed to search a detainee's room to make sure no razor blades were present even though the parole officer knew the detainee had a proclivity to self-mutilate. The detainee obtained access to a razor blade and cut himself deeply. In upholding summary judgment in favor of the parole officer, the court stated: "The evidence shows that [parole officer] Clewell took the appropriate steps to assure Giddings' welfare during the overnight hours by accepting the recommendation of the Coleman Center's director that he be housed in the Center's mental health unit. Further, the Coleman Center assured Clewell that the staff, who knew all about the situation because they too had witnessed it, would care for Giddings during his stay. Under the circumstances, Clewell's assumption that they would not let Giddings have access to more razor blades was likely a reasonable one. ***In any event, making this assumption could not be found to constitute acting with deliberate indifference to Giddings' serious medical needs.***" (emphasis added).

Similarly, in the case at bar, there is no basis to find that Principal Bahm's assumption that Mrs. Brennian would monitor the two boys, taken together with his awareness of the policies regarding kindergarten usage of the bathrooms and the presence of five aids and monitors at recess, one of whom was assigned to monitor the bathroom area, constitutes deliberate indifference so as to shock the conscience of the court.

### c.     Relationship between the State and the Plaintiff

This element of the state-created danger test requires a plaintiff to prove that there was a relationship between the state and the plaintiff.  This element might be more aptly labeled the

"foreseeable victim" element as it "contemplates some contact such that the plaintiff was a foreseeable victim of a defendant's acts in a tort sense." *Kneipp*, 95 F.3d at 1209  The intent of this element is to "exclude from the reach of the state-created danger theory those instances where the state actor creates only a threat to the general population." *Morse*, 132 F.3d at 913.

Here, Plaintiff has not alleged that Leonard, Jr. was a member of a discrete class of persons.   The record is silent on the issue of whether Leonard, Jr. was a member of "a sufficiently discrete group of persons who could have been foreseeable victims" of an assault by Tyler.  There is no evidence that the monitoring of the bathrooms at Solis-Cohen Elementary School created a risk particular to Leonard, Jr. as opposed to every one of the 150 students who were at recess that day. Thus, while there was a relationship between Leonard, Jr. and the District to the extent he attended Solis-Cohen Elementary School, the foreseeability of the harm alleged is too attenuated to credit.

      d.    **Creating the Opportunity for Harm**

Even assuming, which the defendants do not, that plaintiffs' evidence satisfies some or all of the first three elements needed to establish a cause of action under the state-created danger theory of liability under *Bright*, *supra*, plaintiffs' evidence is also deficient in that it fails to allege an affirmative act as required by the fourth element of a state-created danger claim. Instead, Plaintiff at most establishes a failure to act.  Paragraph 66 of the Complaint even alleges a "failure to supervise."

A Due Process Claus violation that is premised on the state-created danger theory must assert a "misuse of state authority, rather than a failure to use it." Bright, 443 F.3d at 282; see also *Kaucher*, 455 F.3d at 433, n.11 (failures to act cannot form the basis of a valid Section 1983

claim).  As clarified by the Third Circuit in *Bright*, the fourth prong of a state created danger claim requires that "*a state actor affirmatively used his or her authority in a way that created danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all*."  *Id.* (internal quotation marks omitted, emphasis added).

In *Bright*, the Third Circuit affirmed the dismissal of a Complaint alleging that police officers and county officials were liable for the murder of an 8 year old girl because they had failed to take her murderer into custody for a known violation of his probation.  Plaintiffs alleged that a parole officer created danger because he had confronted Charles Koschalk, the perpetrator, about violating his parole, but the confrontation was followed up by an inexplicable delay in arresting Koschalk. This delay allegedly emboldened Koschalk to retaliate against the family of the 12 year girl with whom he had illegally had contact by killing her younger sister.  In affirming the dismissal of the Complaint, the Court stated the "reality of the situation described in the complaint is that what is alleged to have created a danger was the failure of the defendants to utilize their state authority, not their utilization of it." Id. at 284-5.  Bright unequivocally rejects the notion that the failure to act constitute a due process violation under the state-created danger theory.  See also *Ye v. United States*, 484 F.3d 634 (3d Cir. 2007).

The alleged conduct of the District is akin to the factual circumstances in *Bright*.  Here, Plaintiff contends that the District violated Leonard, Jr.'s rights when it failed to protect him from the being assaulted by Tyler. Assuming these allegations are true, what Plaintiff alleges here is solely the failure of the District to guard Leonard, Jr. against criminal act by a third party. The Third Circuit squarely rejected the identical theory in *Bright*.

Moreover, an affirmative act on its own is not sufficient. "The test also requires a direct causal relationship between the affirmative act and foreseeable harm to the plaintiff." *Bright,* 433 F.3d at 283, n.7. In other words, the fourth element is not satisfied unless there is "but for" causation. *Kaucher,* 455 F.3d at 433. The Third Circuit defined the level of causation that is necessary to sustain a "state-created danger" action in *Morse.* There the court determined that leaving a school door unlocked contrary to school policy was too attenuated from the ultimate harm that a deranged woman would enter the building and murder a teacher. *Morse,* 132 F.3d at 909.

The actions alleged here certainly demonstrate no greater level of causation than the action of unlocking the door in *Morse.* No reasonable fact-finder could find that the evidence of record establishes the fourth element of a "state-created danger" claim. See *Bright,* 443 F.3d 283-84 (failure to hold revocation hearing for an individual in violation of his parole prior to his killing an eight-year old girl); *Morse* 132 F.3d at 907-08 (failure to prevent mentally disturbed individual from entering school and attacking teacher).

In an instructive pre-*Kneipp* decision, the Third Circuit in *D.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364 (1992) held that school defendants' failure to report, investigate and address incidents in which male students repeatedly molested female students in a unisex school bathroom and a darkroom did not amount to a constitutional violation. *D.R.* 972 F.2d at 1365. In *D.R.,* two female students brought section 1983 claims against school district defendants alleging that they were verbally and sexually molested over a period of five months by several male students. A teacher was in the classroom while these assaults took place, and one plaintiff told the Assistant Director of the school that one of the males was trying to force her into the bathroom to engage in sexual conduct. The Assistant

27

Director and the teacher took no action.  One element of the Complaint was the unisex bathroom and darkroom present in the classroom. The Court stated:

> "We do not believe, however, that the state can be said to have created or increased plaintiffs' risk of danger by constructing and maintaining the graphic arts classroom with its particular physical layout. Bathrooms generally are equipped with inside locks for privacy purposes and obviously, the room was not intended to be used by both sexes at the same time. The same conduct could have occurred had the school built separate bathrooms for its male and female students. As for the darkroom, it must by definition be closed off from the main classroom in order to serve its function. *The existence of the darkroom and of a single restroom, both contained within the high school classroom, did not subject plaintiffs to an inherently dangerous environment.*"

*D.R.* at 1375 (emphasis added).

The D.R. Court concluded that while the school district defendants "passivity and nonfeasance was indefensible, they did not rise to the level of a constitutional violation." *Id* at 1376.  The facts presented in this case, taken as true, are obviously disturbing, but are far less egregious than the situation presented to the Third Circuit in *D.R.*.  Consequently, Plaintiffs fails to establish the constitutional violation necessary to meet their burden of proof.

For all the above reasons, plaintiffs have failed to present evident sufficient to establish a claim under Section 1983.

## VI.   PLAINTIFF HAS FAILED TO ADDUCE COMPETENT EVIDENCE SUFFICIENT TO SUPPORT A CLAIM OF MUNICIPAL LIABILITY UNDER MONELL – THERE IS NO RESPONDEAT SUPERIOR LIABILITY AGAINST THE SCHOOL DISTRICT

For all the reasons set forth above, Plaintiffs have not set forth a cognizable constitutional claim in this matter.  This, of course, is fatal to their municipal liability claim against the District.

However, even assuming a constitutional violation, in order to sustain a §1983 claim against the District, Plaintiff must satisfy the standards established by the Supreme Court in *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978) and its progeny. *Monell* does not eliminate the requirement that the state actor must have violated the plaintiff's rights under the Constitution or federal law. Rather, *Monell* adds an additional hurdle for plaintiffs seeking to sue a local government for injuries inflicted by government employees and agents.

In *Monell*, the United States Supreme Court confirmed that "Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies," but emphasized that, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 690-91. To establish § 1983 liability on such a governing body, the plaintiff must identify either a "policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.* Policy or custom may be established (1) [w]hen a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict or (2) through a course of conduct ... when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir.1990). The Supreme Court has further instructed that municipal liability will attach under §1983 only where a policymaker was deliberately indifferent to the plight of citizens, evidenced by "a deliberate choice to follow a course of action ... made from among various alternatives." *Pembaur v. City of Cincinnati,* 475 U.S. 468, 483 (1986).

Beyond identification of a policy or custom, establishment of § 1983 municipal liability requires the second element of causation. As the Supreme Court emphasized in *Board of the County Commissioner's of Bryan County v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997), "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Id.* at 404. Elaborating on this point, the court explained that: [t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Id.* If the policy or custom of the municipality does not facially violate federal law, causation can only be established by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequence. *Berg v. County of Allegheny,* 219 F.3d 261, 276 (3d Cir. 2000).

Finally, to maintain § 1983 municipal liability, a plaintiff must present a sufficient degree of evidence. In *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985), the Supreme Court effectively defined the body of proof required: "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker ... but where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the policy and the constitutional deprivation." *Tuttle*, 471 U.S. at 823.

30

In this case, Plaintiff has failed to present sufficient evidence to support a *Monell* claim against the School District. There is no evidence of a "policy" or "custom" that led to the alleged constitutional violation at issue in this case. On the contrary, the School District policies in effect at the Solis-Cohen School in May, 2007 with respect to the bathroom facilities were reasonable. If the students involved, Leonard, Jr. and Tyler, were in the bathroom stall together during recess, that was a violation of existing school policy, and was not the result of any school policy. In fact, school policy was designed to prevent such activity from happening.

Moreover, the improper sexual behavior engaged in was a violation of the Code of Student Conduct, as Principal Bahm testified. As a result of the improper conduct, the matter was reported as a Serious Incident and appropriate remedial action was taken. The District cannot be held liable for each and every incident that takes place between students that attend its schools. To hold otherwise would make every incident between children who happen to attend District schools a constitutional violation. Such a result flies in the face of the teachings of the Supreme Court in *DeShaney*.

Plaintiff's failure to present evidence in support of his deliberate indifference allegation and the District's existing policies and Code of Student Conduct clearly illustrates that the District was not indifferent to potential incidents of student violence. Plaintiff has offered no evidence, beyond the bare allegations in the Complaint, and such allegations, without more, are inadequate to establish municipal liability. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, at 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202.

## VII.    AGE DISCRIMINATION ACT

Plaintiffs have adduced no evidence relative to this alleged claim and same should be dismissed as matter of law.

## VIII.   ALL CLAIMS SHOULD BE DISMISSED AGAINST THE INDIVIDUAL DEFENDANTS; NO PUNITIVE DAMAGES ARE RECOVERABLE

In addition to the School District, the defendants include Joseph Bahm, in his individual capacity and in his official capacity, and Arlene Ackerman, individually and as Superintendent of the School District. The Complaint also identifies "John Does, 1-10.[3]" All individual defendants are entitled to summary judgment in their favor.

As set forth above, Title IX claims are not recoverable against individual defendants and should therefore be dismissed.

All claims against the individual defendants in their official capacities should be dismissed because the plaintiffs have also sued the School District. The Court of Appeals for the Third Circuit has affirmed the dismissal of official capacity claims against individuals where a plaintiff also sues the municipal employer. See *Cuvo v. De Biasi*, 169 Fed. App'x. 688, 693 (3d Cir. 2006) ("We will affirm the District Court's dismissal of the claims against the officers in their official capacities because a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them"); see also *Dawson v. Harran*, No. 08-7, 2008 U.S. Dist. LEXIS 36714, 2008 WL 1959696, at *6 (E.D.Pa. May 5, 2008) (granting defendants' motion to dismiss plaintiff's claims against defendants in their official capacities as

---

[3] Although the Complaint names as Defendants John Does, 1 – 10, and refers to them generically in ¶ 11, Plaintiffs never amended the Complaint to replace the names "John Doe" with the parties' real names as required by Federal Rule of Civil Procedure 15. No school employees or officers have been served with the Complaint, and no appearance has been entered on their behalf. As the Third Circuit stated in *Krenzel v. SEPTA*, 91 Fed. Appx. 199, 202, n4 (3d Cir. 2004): "Krenzel also named a John Doe defendant but he never sought to replace him with the name of an actual SEPTA employee. We therefore will not address any claims made against the John Doe defendant."

being duplicative of claims against township); *Burton v. City of Philadelphia*, 121 F.Supp.2d 810, 813 (E.D.Pa. 2000) (same).

With regard to claims against the individuals in their individual capacities, Arlene Ackerman was not an employee of the School District in May, 2007, and therefore there is no basis for individual liability against her based on the allegations in the Complaint.

With regard to claims against Joseph Bahm in his individual capacity, all civil rights claims against him must be dismissed. As set forth at length above, plaintiffs' evidence fails to establish a claim under §1983 and therefore there is no cognizable claim against Principal Bahm for the incidents of May 1 and May 2, 2007. Plaintiff does not establish that Principal Bahm violated any constitutional right. In order to make out a prima facie case under §1983, a plaintiff must show that a person acting under color of law deprived him of a federal right. *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). There is no such evidence in this matter.

Moreover, Principal Bahm is protected by the doctrine of qualified immunity. "Qualified immunity is an 'entitlement not to stand trial or face the other burdens of litigation.' The privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Saucier v. Katz*, 533 U.S. 194, 200-201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (internal quotations omitted).

The Supreme Court recently stated: "The doctrine of qualified immunity "balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*,    U.S.    , 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). The doctrine immunizes government officials from liability and from suit

33

"insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

"[T]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Sharrar v. Felsing,* 128 F.3d 810, 826 (3d Cir. 1997) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)) (quotation marks and citation omitted).

A government official is entitled to qualified immunity depending on two considerations: whether the plaintiff has alleged that the defendant violated a constitutional right, and "whether the right that was violated was clearly established, or, in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Curley v. Klem,* 499 F.3d 199, 206-07 (3rd Cir. 2007).  (quoting *Saucier v. Katz,* 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). In *Pearson,* the Supreme Court held "that the Saucier procedure should not be regarded as an inflexible requirement," and that courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 129 S. Ct. at 813, 818.

In *Walter v. Pike County,* 544 F.3d 182  (3rd Cir. 2008), the Court ordered that defendants were entitled to summary judgment in their favor on a state-created danger claim, on the basis of qualified immunity, because no reasonable jury could find that the individual defendants acted with deliberate indifference. The same analysis applied here. No reasonable jury could find that Principal Bahm acted with deliberate indifference, for the reasons set forth at length above.

34

There is no respondeat superior liability for claims arising under §1983. Principal Bahm cannot be held responsible for any conduct on the part of others. "It is well-settled that [a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

The Third Circuit recently addressed this issue in *Bayer v. Monroe County Children and Youth Services*, 577 F.3d 186 (3rd Cir. 2009), stating: "In light of the Supreme Court's recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), it is uncertain whether proof of such personal knowledge, with nothing more, would provide a sufficient basis for holding Bahl liable with respect to plaintiffs' Fourteenth Amendment claims under § 1983. See id., 129 S. Ct. at 1949, 173 L. Ed. at 883 ("In a § 1983 suit or a Bivens action--where masters do not answer for the torts of their servants--the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose Bivens liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.")."

In the present case, Plaintiff's evidence, when viewed in the light most favorable to Plaintiff, merely established that Principal Bahm took action when he learned of the incident of May 1, 2007. He instructed the kindergarten classroom aid, who was responsible for discovering the improper behavior on the first place, to monitor the boys and not to allow them to use the bathroom at the same time. For some unknown reason, the admonition did not work, but the

35

evidence fails to establish that the incident of May 3, 2007 was the result of any conduct on the part of Mr. Bahm.

Finally, plaintiffs are not entitled to punitive damages. See *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) (holding that punitive damages may not be awarded against municipalities under § 1983).

## IX.    CONCLUSION

For all of the above reasons, all defendants ask that judgment be entered in their favor and against plaintiffs with prejudice.

Respectfully Submitted By:


Diane Bernoff Sher, Esquire

Assistant General Counsel

School District of Philadelphia

Office of General Counsel

440 N. Broad Street, 3rd Floor

Philadelphia, PA 19130

215-400-5610 (p)

215-400-4121 (f)