IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD BROOKS, et al. | CIVIL ACTION |
| v. | |
| CITY OF PHILADELPHIA, et al. | NO. 09-1888 |



## MEMORANDUM AND ORDER

JACOB P. HART  October 5, 2010
UNITED STATES MAGISTRATE JUDGE

This action arises from a Complaint filed by Plaintiffs, Leonard Brooks and Monica Ryan, husband and wife individually and as the parents and guardian of Leonard Brooks, Jr., against Defendants, City of Philadelphia, Solis-Cohen Elementary School, The School District of Philadelphia, Joseph Bahm, individually and as Principal of Solis-Cohen Elementary School, and Arlene Ackerman, individually and as Superintendent of the School District of Philadelphia. Plaintiffs seek damages pursuant to Title IX of the Education Act, 20 U.S.C. § 1681(a); for civil rights violations under Title 42 U.S.C. 1983, 1985 and 1988; for violation of the Age Discrimination Act of 1975, 42 U.S.C. 6101, et seq., and against the School District under a Monell claim. Plaintiff voluntarily dismissed the City of Philadelphia and Solis-Cohen Elementary School from this action by stipulation of counsel, which was filed in this case as Docket entry #17. Currently pending is Defendant's Motion for Summary Judgment, to which Plaintiffs have responded. For the following reasons, the Court grants the Defendants' motion for summary judgement and dismisses the action in its entirety.

## I. FACTUAL AND PROCEDURAL HISTORY

This case stems from incidents which occurred involving the minor plaintiff, Leonard Brooks, Jr. (Brooks, Jr.) and another kindergarten student, Tyler, at Solis Cohen Elementary School on May 1 and May 3, 2007. Brooks, Jr. had started attending the school only one or two weeks earlier. On May 1, 2007, Tyler touched Brooks, Jr.'s genitalia while the boys were in the bathroom together. The kindergarten supportive service assistant, Ms. Brennian, found the two boys in the same bathroom stall during recess. When she asked why they were in the same stall, Brooks, Jr. told her that Tyler had touched his private area. Ms. Brennian took the boys to the kindergarten teacher and told her what happened. Exhibit D at 15-16. In response to the first incident, Principal Bahm talked to both boys, contacted the parents to tell them what happened, and talked to Mrs. Brennian to ask her to make sure that when she escorts the children to the bathroom that they not be allowed to use the bathroom at the same time. Id. at 25-26. Plaintiff, Leonard Brooks Sr. was notified of this incident when he picked his son up from school. Complaint at par 14. He discussed the incident with the principal and the teacher and was told that the school was going to make sure the incident did not happen again, specifically that the teacher would monitor the boys and move their seats. (Exhibit F at 22.)

Two days later, on May 3, 2007, Brooks, Jr. came to Ms. Brennian and told her that Tyler had "bumped him on his behind" in the bathroom. This incident happened while the boys were at lunch recess about five or ten minutes earlier. Ms. Brennian again notified the principal and the teacher. The school counselor, Arlene Taylor, interviewed both boys. She summarized her interviews as follows:

> I spoke to Tyler first. I asked him what happened. He told me he went into the

> bathroom and pulled his pants down with Leonard. And he said that he tried to
> hump Leonard. He did ask Leonard to go to the bathroom with him. I asked him
> what the word hump means. He said that he'll pull down his pants and do it in the
> back. I asked him where did he learn this, and he said TV. I asked him what he
> was watching and he said he didn't know. That was my conversation with Tyler.
>
> ...
>
> And when I saw Leonard, he told me that Tyler asked him to go into the bathroom
> with him. He took out his ding-dong – that's what he called it– and put it in his
> back. He pointed to his back. I asked him to point to where he put it. I asked him
> if he pulled down his pants and he said no. And then I rephrased that: So that
> means you did not take your pants down? And he said: That's right. And that
> was my conversation with Leonard.

Exhibit E at 12-13.

In response, Ms. Taylor notified both sets of parents, notified the Department of Human Services, and referred Tyler for counseling at the J. Peterson Institute, which deals with sexual issues. The teacher and the assistant, Mrs. Brennian also prepared summaries of what happened and a "Serious Incident Report" was prepared.

Leonard's parents came to the school and met with the principal. They also contacted the police and took Leonard Jr. to Nazareth Hospital. The hospital did not find any physical injury or physical signs of trauma, but found that he was emotionally traumatized. Plaintiffs, Leonard, Jr's parents, requested that he be transferred to another school. (Plaintiff's Statement of Uncontested Facts at par. 26, citing Bahm deposition at p. 28-29; Brooks, Sr. Deposition at p. 43). The principal complied with their request and took the appropriate steps to facilitate the transfer.

No changes have been made to the bathroom guidelines or policies since this incident because it was an isolated incident. There have been no similar incidents before or after this, involving Tyler or any other student.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Williams v. Borough of West Chester, 891 F.2d 458, 463-464 (3d Cir. 1989). A factual dispute is "material" only if it might affect the outcome of the case. Anderso v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). For an issue to be "genuine", a reasonable fact finder must be able to return a verdict (or render a decision) in favor of the non-moving party. Id. On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative. Brewer v. Quaker State Oil Refining Co., 72 F.3d 326, 331 (3d Cir. 1995). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987); Baker v. Lukens Steel Co., 793 F.2d 509, 511 (3d Cir. 1986). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

Notably, however, Rule 56(e) sets forth the burden of the nonmoving party as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule must set forth the specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond,

4

summary judgment, if appropriate, shall be entered against the adverse party. Fed.R.Civ.P. 56(e). See Roa v. City of Bethlehem, 782 F. Supp. 1008, 1014 (E.D. Pa. 1991) (a party resisting a motion for summary judgment must specifically identify evidence of record which supports her claim and upon which a verdict in her favor may be based.) With respect to an issue on which the non-moving party has the burden of proof, the burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. at 325.

## III. DISCUSSION

In their response to Defendants' motion, Plaintiffs have withdrawn their Monell claim, as well as all claims against Defendant, Arlene Ackerman.

### A. Title IX

Defendants assert that the evidence fails to establish a claim under Title IX as the School District was not deliberately indifferent. In their response, Plaintiffs withdraw their Title IX claims against the individual defendants, reserving the claim against the School District and Principal Bahm in his official capacity.

Title IX provides that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance..." 20 U.S.C. §1681(a). In Cannon v. University of Chicago, 441 U.S. 677, 709, 99 S.Ct. 1946, (1979), the Supreme Court recognized an implied private cause of action under Title IX. The Court has also recognized that money damages are available in this type of action. Franklin v. Gwinett County

Public Schools, 503 U.S. 60, 112 S. Ct. 1028 (1992). In Gesber v. Lago Vista Independent School District, 524 U.S. 274, 283-84, 118 S. Ct. 1989 (1998), the Supreme Court held that Title IX liability may be imposed against a school district for the sexual harassment of a student by a teacher where the school was deliberately indifferent to the harassment. The Supreme Court has since recognized that Title IX liability may also be imposed under certain circumstances where a school district is deliberately indifferent to student-on-student sexual harassment. Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 643, 119 S. Ct. 1661 (1999).

To prevail against the School District in their claim of student-on-student sexual harassment under Title IX, Plaintiffs must show that (1) the School District received federal funds; (2) sexual harassment occurred; (3) the harassment occurred under "circumstances wherein the [School District] exercise[d] substantial control over both the harasser and the context in which the ... harassment occurred"; (4) the School District had "actual knowledge" of the harassment; (5) the School District was "deliberately indifferent" to the harassment; and (6) the harassment was "so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school." Id. at 645, 650. The Supreme Court clarified "that a recipient of federal funds may be liable in damages under Title IX only for its own misconduct. The recipient itself must deny persons the benefit of, or subject persons to discrimination under its programs or activities in order to be liable under Title IX." Id. at 641 (internal quotations omitted). The Court in Davis made it clear that the Plaintiff in that case was not asking that the Court expand liability to hold the Board liable for the student's actions, but rather it was seeking "to hold the Board liable for its own decision to remain idle in the face of known student-on-student harassment in its

6

schools." Id.

When deciding Davis, The Supreme Court noted that in Gesber, when finding that a School could be liable for teacher-to-student harassment, it had held that the school as recipient of funds "could only be liable where their own deliberate indifference effectively caused the discrimination." The court noted that the high standard imposed in Gesber was "to eliminate any risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions." Id. at 643, quoting Gesber, 524 U.S. at 290-91. The Court in Davis stated as follows:

> We stress that our conclusion here- that recipients may be liable for their deliberate indifference to known acts of peer sexual harassment- does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action... School administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed deliberately indifferent to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.

Id. at 648.

The Defendants' primary argument as to this claim is that the Plaintiffs have failed to demonstrate deliberate indifference. Given that Plaintiffs requested that their son be transferred after the second incident and that the school complied with the request by facilitating the transfer, it is the defendants' response to the first incident that is in question[1]. The fact that the principal's response did not in fact prevent the second incident from occurring is not alone sufficient to

---

[1] In their reply brief, Plaintiffs state that they asked for the transfer because the principal refused to remove Tyler from the class. However, there is no dispute that the principal granted their request to transfer their son to another school as they requested at this meeting. They argue that the school district's alleged failure to respond to the first incident was unreasonable given that it did not prevent the second incident. (Reply brief at p.8).

7

demonstrate deliberate indifference for Title IX liability. Title IX does not require funding recipients to "'remedy' peer harassment and to 'ensure that... students conform their conduct to certain rules.'" "On the contrary, the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable." Davis, 526 U.S. 629, 649. The Supreme Court set forth in Davis that "this is not a mere reasonableness standard" and held that "in an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law." Id.

In response to the May 1st incident, it is undisputed that the school notified both sets of parents and that the principal spoke to the school aid and requested that the boys not be permitted in the bathroom together. Even though somehow the boys were able to get back into the bathroom together without Ms. Brennian knowing, this does not automatically mean that the school was deliberately indifferent.

"Where a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances." Jones v. Indiana Area School Dist., 397 F. Supp 2d 628, 645 (W.D. Pa. 2005), quoting Vance v. Spencer County Public School District, 231 F.3d 253, 261 (6th Cir. 2000). While we would agree that if the school did nothing further after the second incident, already knowing that they were not successful in keeping them apart, it may qualify as deliberate indifference, we find that the response to the original incident was as a matter of law not deliberately indifferent. The first incident was by all accounts not as serious as the second. At that time, the boys were found together in the bathroom stall and it appeared to be exploration

by 6 year old boys. The school's response of contacting the parents, meeting with them in person, and talking to the teacher and aid in order to try to prevent another occurrence or opportunity for another occurrence cannot be considered deliberate indifference.

Defendants assert that Plaintiffs have also failed to demonstrate the other elements for a Title IX claim. Because we agree that what occurred during the May 1 incident did not rise to the level of harassment there is no evidence that the district had "actual knowledge" of harassment prior to May 3, 2007. The reference Plaintiffs make to Tyler as being "a known sex offender" are completely unfounded. (Reply brief at p. 8). Other than an unsupported claim in the Complaint that the "school district officials, including the counselor, John Doe and Principal Bahm, knew that Tyler was sexually assaulting and harassing Brooks, Jr. and other students at school", there is absolutely no evidence of any prior incidents involving Tyler.

The reference to Tyler as a known sex offender is unfounded even after the first incident. Contrary to Plaintiffs' assertions, there is absolutely no evidence that Tyler had sexually harassed other students or that the school was aware of any other harassment either before or after these incidents. The incident of May 1, 2007 obviously predates the second incident. However, Defendants argue that the circumstances of the May 1, 2007 incident simply do not rise to the level of sexual harassment. As Defendants claim, it is unclear from all accounts what the two boys were doing in the bathroom stall on May 1. We also agree that evidence that harassment was severe and pervasive is also lacking. As Defendants assert, there is undisputed testimony that the incident was isolated.

Finally, in this case, we find that as a matter of law, the district's response cannot be considered to be deliberately indifferent. The claim of harassment in <u>Jones v. Indiana Area</u>

School Dist., survived summary judgment because after the plaintiff was stalked and harassed for years from eighth through tenth grade, including an incident where the harasser attempted to get into the plaintiff's car, the school did nothing more than talk to him. Jones, 397 F. Supp 2d at 646. Although they knew that the conduct was continuing, the school district only began to take additional action after the alleged harasser kept plaintiff in the weight room against her will for a half hour until another student came to her rescue. Id. at 645. The court was therefore unable to find the school districts responses from 1997 until December 2001 as "not clearly unreasonable as a matter of law." Id. at 645-46. In the present case, however, after the second incident, making them aware that their initial attempts were not effective, the school district did not simply continue the same methods. Instead, the district complied with the Plaintiffs' request to transfer their son. We find as a matter of law that the defendants' response in this matter was not deliberate indifference. Accordingly, we grant Defendants' motion as to the Title IX claim.

### B. Section 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254 - 2255 (1988). Section 1983 does not provide substantive rights, "but provides a vehicle for vindicating the violation of rights created by the United States Constitution or federal law." See Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, (1989); Morse v. Lower Merion School Dist., 132 F.3d 902, 907 (3d Cir.1997). Thus, in order to succeed on the § 1983 claim, Plaintiff must demonstrate that the defendants (1) were acting under color of state law, and (2) while acting as such, deprived them of a constitutional or federal right. Id.

10

In this case, it is not disputed that the defendants were acting under the color of state law. As far as the federal or Constitutional right that plaintiffs allege was violated, plaintiffs rely upon the "state created danger" exception to the substantive due process clause of the Fourteenth Amendment.

It is well established that the Due Process Clause does not impose an affirmative duty upon the state to act to protect its citizens. DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96, 109 S. Ct. 998 (1989) (holding that defendants' failure to provide plaintiff with adequate protection against his father's violence did not violate his rights under the substantive component of the Due Process Clause). However, there is an exception to this general rule for a "state created danger", imposing liability where a state actor places a plaintiff in a position of danger. Kneipp v. Tedder, 95 F.3d 1199, 1205 (3d Cir. 1996). The Third Circuit in Kneipp set forth a four part test to determine whether liability for a "state created danger" attaches: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted with willful disregard for the plaintiff's safety; (3) there existed some relationship between the state and the plaintiff; [and] (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. Id.

Considering the facts of this case with inferences most favorable to the Plaintiffs, we find that a reasonable jury could not find that all of these elements have been satisfied. A specific harm to a specific individual must be foreseeable to satisfy this first element. Kneipp, 95 F.3d at 1208. The court in Kneipp found that a reasonable jury could find that this element was satisfied where the police had stopped a married couple, sent away plaintiff's husband, and then released the intoxicated woman in the cold, alone late at night to walk home. She was found at the

bottom of an embankment, where she had fallen and suffered hypothermia resulting in debilitating injuries. The Court found that a reasonable trier of fact could conclude that "the harm likely to befall [plaintiff] if separated from [her husband] while in a highly intoxicated state in cold weather was indeed foreseeable ." Id.

However in Morse v. Lower Merion Sch. Dist., 132 F.3d 902 (3d Cir. 1997), where the school had left a back door unlocked for contractors and a mentally ill woman entered the school through that door and killed a teacher, the court found that the School district had no reason to foresee that type of harm. The Court found that the school's actions increased the risk of harm, but the harm that resulted was not directly related to the increased risk and was not foreseeable. Id, at 914. The Third Circuit held "that defendants, as a matter of law, could not have foreseen that allowing construction workers to use an unlocked back entrance for access to the school building would result in the murderous act of a mentally unstable third party, and that the tragic harm which ultimately befell [the teacher] was too attenuated from defendants' actions to support liability." Morse v. Lower Merion School Dist., 132 F.3d at 908.

Similarly, the court did not find sufficient evidence to satisfy the first element of the Kneipp test in Bailey v. Sch. Dist. Of Phila., 2008 WL 343088, *3 (E.D. Pa. 2008). In that case, a ninth grade student, after meeting outside of school to go on a trip, was informed that she was not permitted to go on the trip because of confusion involving the payment and lack of space. While walking back to the school she was lured away by an adult male who took her to a drug house where she was raped. Judge O'Neill found that "Much like the victim in Morse, plaintiff B. was 'the tragic victim of random criminal conduct rather than of school officials' deliberate, callous decisions.'" Bailey, 2008 WL 343088 at *3, quoting Johnson v. Dallas Indep. Sch. Dist.,

12

38 F.3d 198, 202 (5th Cir.1994).

In this case, Plaintiffs have failed to present any evidence of prior incidents involving Tyler and Plaintiff or Tyler and any other students. They have failed to present any evidence that the school or anyone else was aware of prior incidents or the potential for the type of incident that occurred on May 3, 2007. Even considering the facts most favorable to Plaintiff, the first incident involving Tyler was that which occurred on May 1, 2007. Although this first incident may have alerted the school to attempt to keep the two boys apart, as defendants argue, we do not find that any reasonable jury would conclude that this caused Defendants to have reason to know that an incident as serious as what occurred on May 3, was likely to occur. Furthermore, Tyler's behavior was not a direct result of any actions of the defendants. We do not find the harm suffered by plaintiff to be foreseeable or a fairly direct result of the defendants' actions. However, even if the harm could be considered foreseeable or fairly direct, Plaintiff has not presented triable issues as to all of the remaining elements.

To satisfy the second element of the test, the Third Circuit held in Kneipp that the state actor must have acted in willful disregard or deliberate indifference for the safety of the plaintiff. Kneipp, 95 F.3d at 1208 & n. 21. This element has been modified over the years and the Supreme Court held in a case involving a police high speed chase that to satisfy this element, the state actor must have acted with a degree of culpability that shocks the conscience. County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708 (1998). Such culpability requires more than the state actor acting in willful disregard for the plaintiff's safety. Rivas v. City of Passaic, 365 F.3d at 194. Following the Supreme Court's decision in County of Sacramento v. Lewis, the Third Circuit suggested that the "shocks the conscience" standard, rather than deliberate

indifference, was applicable to all substantive due process claims. Miller v. City of Philadelphia, 174 F.3d 368, 374-75 (3d Cir.1999). However, the Third Circuit "also indicated that the precise degree of wrongfulness required to reach the level of conscience-shocking behavior depends on the circumstances of a particular case and that when an official has 'the luxury of proceeding in a deliberate fashion,' id. at 375-76, acts that could be described as deliberately indifferent might suffice." Jones v. Indiana Area School Dist., 397 F.Supp.2d 628, 649 (W.D. Pa. 2005) (citing Miller, 174 F.3d at 375-76). "[T]he environment created by the state actors must be dangerous; they must know it to be dangerous; and ... [they] must have been at least deliberately indifferent." Morse,132 F.3d at 910 (quoting Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198, 201 (5th Cir.1994). "In other words, the state's actions must evince a willingness to ignore a foreseeable danger or risk." Id.

We simply cannot find that the actions of the defendants in this case "shock the conscience" or even that they acted with willful disregard or deliberate indifference to the plaintiff's safety. As discussed when addressing the Title IX claim, after the two boys were found together in the bathroom on May 1, 2007, the principal notified and even talked to both parents, as well as staff members and planned to keep the boys apart. He instructed the kindergarten assistant, Ms. Brennian to make sure the boys were not alone together in order to prevent another incident like the May 1st incident. As Defendants note, there is no evidence that his reliance upon Ms. Brennian was unreasonable since she was the one that discovered the boys together. The fact that the May 3, 2007 incident occurred is not a result of the defendants' deliberate indifference. We find that the defendants as a matter of law did not willfully or deliberately disregard a foreseeable danger. At most, the incident was the result of a negligent

14

failure to properly supervise the students. However, as the Third Circuit noted in Morse, "[a]ssuming their actions rose to the level of negligence, merely negligent acts cannot support a claim under the state-created danger theory of § 1983." Morse, 132 F.3d at 911-912. As the court found in Morse, the plaintiff "was 'the tragic victim of random criminal conduct rather than of school officials' deliberate, callous decisions,' and plaintiff's complaint cannot be read to allege otherwise." Id.

To satisfy the third element of the Kneipp test, there must be a relationship between the plaintiff and the state. The Third Circuit has explained that "the relationship must be sufficiently close to exclude 'those instances where the state actor creates only a threat to the general population', but not so restrictive as to limit 'the scope of §1983 to those instances where a specific individual is placed in danger.'" Rivas v. City of Passaic, 365 F.3d 181, 197 (3d Cir. 2004) (quoting Morse, 132 F.3d at 913). In Morse the Third Circuit held that the plaintiff "must be a member of a discrete class of persons subjected to potential harm brought about by the state's actions." Id. Defendants allege that the plaintiff has failed to present any evidence that Plaintiff was a member of a discrete class or that he was subjected to potential harm any more than any other student. However, we do not need to decide this issue because it is clear that remaining elements of the Kneipp test cannot be satisfied in this case.

Even if the Plaintiff was able to satisfy other elements of the Kneipp test, we find that as a matter of law, he also cannot satisfy the final element. The fourth element of the test, "is whether the state actor used its authority to create an opportunity which otherwise would not have existed for the specific harm to occur." Morse, 132 F.3d at 914. The Third Circuit has found that "[l]iability under the state created danger theory is predicated upon affirmative acts which work

15

to the plaintiff's detriments in terms of exposure to danger." D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364, 1374 (3d Cir. 1992).

In Bright v. Westmoreland County, 443 F.3d 276 (3d Cir. 2006), the Court found that the fourth element was not satisfied where the Complaint alleged that an Officer had assured plaintiff's family approximately three weeks before the murder that the attacker would be arrested and in reliance upon this assurance, the plaintiffs failed to take defensive actions, such as leaving the area with family, hence creating the opportunity for the damages ultimately sustained. Bright v. Westmoreland County, 443 F.3d at 284. The Third Circuit held that "[i]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Id. at 282.

In Maxwell ex rel. Maxwell v. School Dist. of City of Phila., 53 F. Supp.2d 787, 793 (E.D. Pa.1999), the Third Circuit found that the fourth element of the Kneipp test was satisfied where the plaintiff, a special education student, was attacked and raped in her classroom by fellow students. The school district had locked the classroom doors so students could not leave and the substitute teacher told the students, who had become disruptive, she did not care what they did as long as they did not bother her. The substitute teacher saw two students attempt to rape another student, who was able to get away, but the teacher did nothing. Two students then took plaintiff to the back of the room and after moving a portable blackboard, raped her on the floor behind the blackboard. The teacher was aware of the attack, but again did nothing. The school district had also received prior complaints regarding the attackers being involved in assaults. When analyzing the fourth element of the Kneipp test, the Court found that the state's action of locking the doors and informing the class that they would not be disciplined placed Plaintiff in harm's way. Id. at 793.

In this case, Plaintiffs assert that the Principal Bahm used his authority to create an opportunity that otherwise would not have existed for Tyler's conduct. Defendants argue that plaintiff at most establishes a failure to act, since in the Complaint they actually reference a failure to supervise. This is not a case where the district through the principal ignored the situation and failed to act at all. It is clear that Principal Bahm took steps to attempt to keep the boys apart by seeking the assistance of the kindergarten aid.

However, a reasonable jury could not find that the principal's response placed Plaintiff in a more dangerous situation. We find only that the principal's actions may not have been enough to prevent the conduct, but not that the Defendants increased the danger or provided an opportunity that otherwise would not have existed for Tyler's conduct. Contrary to Plaintiffs' claims, the principal's verbal assurances did not create an opportunity that otherwise would not have existed for the incident to occur. Plaintiffs were free to remove Brooks, Jr. from the school at all times. The record demonstrates only that the school may not have done enough to prevent the incident, but not that they increased the danger. The principal did not facilitate the attack, for example by locking the boys in a room together or telling Tyler he could do whatever he wanted. See Maxwell, 53 F. Supp.2d at 793. A reasonable jury could not find that the principal's response to the first incident created the harm which occurred in this case or placed plaintiff in a more dangerous situation.

Plaintiffs have failed to set forth evidence to establish a claim for a state created danger under 1983. For this reason, defendants' motion will be granted as to this claim as well.

C. **Remaining Claims**

Although Plaintiffs did not specifically state that they were withdrawing the claim of age

discrimination, Plaintiffs did not set forth any argument or any evidence whatsoever in support of such a claim. This claim must be dismissed.

## IV. CONCLUSION

While the Court sympathizes with the Plaintiffs, Plaintiffs have failed to set forth evidence to support their claims. For all of the reasons set forth herein, the Court will grant summary judgment in favor of the Defendants and the matter will be dismissed in its entirety.